UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN FITZGERALD SMITH,

      Petitioner,                             Civil No. 05-CV-40291-FL
                                              HONORABLE PAUL V. GADOLA
v.                                        UNITED STATES DISTRICT JUDGE

RAYMOND BOOKER,

      Respondent,

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

      John Fitzgerald Smith, ("Petitioner"), presently confined at the Ryan Correctional Facility in Detroit, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, Petitioner challenges his conviction for armed robbery, M.C.L.A. 750.529, possession of a firearm during the commission of a felony, M.C.L.A. 750.227b; felon in possession of a firearm, M.C.L.A. 750.224f; carrying a concealed weapon, M.C.L.A. 750.227; and being a fourth habitual offender, M.C.L.A. 769.12. For the reasons stated below, the petition for writ of habeas corpus is denied.

## I.  Background

      Petitioner was convicted of the above offenses following a jury trial in the Muskegon County Circuit Court. This Court recites verbatim the relevant facts regarding Petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, which are presumed correct on habeas review. *See Long v. Stovall,* --- F.Supp.2d ----, No. 2006 WL 2711824, * 1 (E.D. Mich.

September 20, 2006)(citing *Monroe v. Smith,* 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001)):

> Defendant's convictions arise from the December 2, 1999, robbery of the Muskegon Governmental Employees Federal Credit Union that occurred within minutes after it opened. Cassandra Baker, a teller at the credit union, was approached by an African-American man with high cheekbones and a thin mustache. The man was wearing a dark golfer's hat with a Nike logo on the back and a blue and green wind suit jacket. A videotape of the robbery showed that the man appeared to be wearing large-framed glasses. He handed Baker a note, which stated, "this is a sick [sic] up." Baker read the note, looked up, and saw a tarnished gun pointed at her. She provided the man with more than $ 2,000, including "bait" money, which is money capable of being identified by the credit union. The bait money, two $ 20 bills and one $ 10 bill, was clipped together. Baker put the money into the man's brown banker's bag.

> A credit union customer chased the robber after he left the credit union. Along the route taken by the robber, the bait money and some single dollar bills were found. A dark golfer's cap with a Nike logo was also recovered from a shed along the route. Defendant's DNA was positively identified in the top lining of the recovered hat. The statistical probability of finding an unrelated individual at random to match defendant's DNA in the hat was 1 in 814 billion for the Caucasian population, 1 in 22.6 billion for the African-American population, and 1 in 2.8 trillion for the Hispanic population. While mixed DNA was found on threads from the Nike logo of the hat, defendant was not eliminated as a contributor from that mixed DNA.

> Shortly after the robbery, defendant was observed by the police and videotaped by a police car camera. He was exiting an alley between Fifth and Sixth Streets in the general area where the robber ran. Defendant was wearing a large orange coat. He went to the home of David Day and asked Day to jump his car. Defendant commented that, if Day had not been outside, the police probably would have picked him up. Defendant's car was parked near the credit union in an area where no businesses were operating. Day went with defendant and jumped the car. Defendant subsequently switched cars with his brother, who owned a brown Oldsmobile Cutlass with custom white stripes.

> Kenneth Jones, who lived on Fifth Street, testified that, on the morning of the robbery, a man arrived at his house. Jones saw a brown car with white stripes. The man, who Jones could not or would not identify, wanted to retrieve something from Jones' garbage can. Jones told the police that the man said, "I don't mean to disrespect you. The police were chasing me and I put something in your garbage can."

2

Baker could not identify the robber, but she later identified the gun used during the robbery, and she identified the jacket worn by the robber.  She also identified a brown, vinyl bank bag and a golfer's hat that appeared consistent with those worn by the robber.  The jacket, bank bag, and gun were recovered from the home of defendant's girlfriend, Yolanda Brown, in Grand Rapids.  Twenty-nine $ 100 bills were also recovered from Brown's home, along with several of defendant's personal items.  After December 2, 1999, defendant made several large purchases.  Defendant lied to Brown about where he obtained money in December 1999.  He told her that he finally received $ 2,000 from a prison account.  The evidence established, however, that defendant cashed out his prison account in April 1999 and received $19.77.  He never had a prison account with a $ 2,000 balance.

Dimitri Anderson, who knew defendant from childhood, was jailed with him in August 2001.  Defendant admitted to Anderson that he robbed the credit union and stated that he parked near the credit union and went inside.  He had planned to leave his car running during the robbery, but it stalled.  He gave a note to one of the three tellers.  The note contained a misspelled word.  Defendant used a small, "raggedy ass" gun during the robbery, and he was chased as he left the credit union.  He threw away the bait money and dropped some additional money.  Defendant subsequently found someone to jump his car.  Defendant later used his brother's car to retrieve the money that he ditched at Ken Jones' house.

*People v. Smith,* No. 248039, 2004 WL 2347701, at * 1-2 (Mich.Ct.App. October 19, 2004).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 472 Mich. 938; 698 N.W. 2d 397

(2005).  Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Defendant's constitutional rights under the Fourth Amendment were violated when the court declined to suppress evidence obtained under a search warrant that was defective because it was not supported by probable cause.

II. Defendant was denied his right to a fair trial and his right of confrontation by the violation of discovery and the last minute addition of a witness claiming that defendant confessed to him in prison.

III. Defendant was denied due process by an unduly suggestive identification procedure, conducted without counsel being present.

IV. Defendant was denied a fair trial by the grossly negligent destruction of key evidence, and by his attorney's failure to move to dismiss or to request an instruction

3

based on the lost evidence.

V.  Defendant was denied his right to a speedy trial by the two and one-half year delay.

VI. Where the police did not stop the interrogation when Mr. Smith requested counsel, defendant was denied his Sixth Amendment right to counsel and his Fifth Amendment rights when his statement was admitted against him at trial.

VII. Mr. Smith was denied due process, equal protection, and his right to a fair trial by the denial of funds to hire an identification expert.

## II.  Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  An "unreasonable application" occurs when the state court identifies the correct legal principle from a Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes

4

in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

### III.  Discussion.

**A.  Claim # 1.  The Fourth Amendment claim.**

Petitioner first alleges that the trial court erred in refusing to suppress evidence obtained from his girlfriend's house as being the result of an illegal search because it resulted from a defective search warrant under the Fourth Amendment.

A federal habeas review of a petitioner's arrest or search by state police is barred where the state has provided a full and fair opportunity to litigate an illegal arrest or a search and seizure claim. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976); *Machacek v. Hofbauer*, 213 F. 3d 947, 952 (6th Cir. 2000).  For such an opportunity to have existed, the state must have provided, in the abstract, a mechanism by which the Petitioner could raise the claim, and presentation of the claim must not have been frustrated by a failure of that mechanism. *Riley v. Gray*, 674 F. 2d 522, 526 (6th Cir. 1982).  Therefore, even "potentially meritorious Fourth Amendment claims" are barred by *Stone* on habeas review if Petitioner had a full and fair opportunity to litigate his claims in the state courts. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003)(internal citation omitted).

Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim. See *Robinson v. Jackson,* 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005)(citing *People v. Ferguson*, 376 Mich. 90, 93-94, 135 N.W. 2d 357 (1965)(motion to suppress), *People v. Harris*, 95 Mich. App. 507, 509; 291 N.W.2d 97 (1980)).

Petitioner is not entitled to habeas relief, because he has not shown that a failure of that

5

procedural mechanism prevented him from litigating his Fourth Amendment claim.  The record reveals that Petitioner challenged the propriety of the search warrant and resulting search and seizure by filing a motion to suppress prior to trial.  The state trial court denied the motion to suppress.  Petitioner again raised his Fourth Amendment claim before the Michigan Court of Appeals and the Michigan Supreme Court, which denied him relief.  From the record, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment claim and that he received all the process he was due. Therefore, any claim concerning the validity of the search warrant and resulting search and seizure is not cognizable on habeas review pursuant to *Stone v. Powell*, 428 U.S. at 494-95.

**B.  Claim # 2.  The discovery violation claim.**

Petitioner next contends that he was deprived of a fair trial because the prosecutor failed to disclose until the day of trial that he intended to call Dmitri Anderson as a witness. [1]

To the extent that Petitioner is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief.  A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F. 3d 416, 441 (6th Cir. 2002); *See also Friday v. Straub,* 175 F. Supp. 2d 933, 940 (E.D. Mich. 2001).

---

[1]  Respondent contends that Petitioner's second, fourth, fifth, and sixth claims should be procedurally barred from habeas review, because Petitioner failed to properly preserve these claims at the trial court level. Although the issue of whether a claim is procedurally barred should ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *See Johnson v. Warren,* 344 F. Supp. 2d 1081, 1089 (E.D. Mich. 2004)(quoting *Barrett v. Acevedo,* 169 F. 3d 1155, 1162 (8th Cir. 1999)).  In this case, because "the procedural default issue raises more questions than the case on the merits", this Court will assume, for the sake of resolving the claims, that there is no procedural default by Petitioner and will decide the merits of these claims. *Id.*

6

To the extent that Petitioner is contending that the violation of the discovery order violated his due process rights, this claim must fail also.  Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Petitioner's *Brady* claim fails for several reasons.  First, Dmitri Anderson testified at Petitioner's trial.  *Brady* generally does not apply to the delayed disclosure of exculpatory information, but only to a complete failure by the prosecutor to disclose such information. *See United States v. Davis,* 306 F. 3d 398, 421 (6th Cir. 2002)(internal citations omitted).  If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant is prejudiced by its nondisclosure. *See United States v. Word*, 806 F. 2d 658, 665 (6th Cir. 1986); *United States v. Benc*s, 28 F. 3d 555, 560-61 (6th Cir. 1994).  The Sixth Circuit noted that "[T]he Supreme Court rejected the claim that the duty to disclose hinges on the usefulness of the material to pretrial preparation.  Such a standard would 'necessarily encompass incriminating evidence as well as exculpatory evidence, since knowledge of the prosecutor's entire case would always be useful in planning the defense.'" *Bencs,* 28 F. 3d at 560, n. 5 (*quoting United States v. Agurs,* 427 U.S. 97, 112, n. 20 (1976)).

In the present case, any claim that the late disclosure of these discovery materials may have precluded defense counsel from adequate trial preparation is non-cognizable pursuant to *Agurs. See Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004)(citing *Bencs,* 28 F. 3d at 561).  In addition, any claim that the belated disclosure of this evidence hindered Petitioner's ability for

effective cross-examination lacks any substance, because Petitioner has failed to offer any explanation on how the tardy disclosure of the fact that Anderson would be called as a witness hampered his ability to cross-examine Anderson. *Id.* Petitioner is therefore not entitled to habeas relief on his second claim.

### C. Claim # 3.  The suggestive identification procedure claim.

Petitioner next claims that he was entitled to a line-up procedure with respect to the firearm retrieved by the police and displayed to the victim for her identification.

The Michigan Court of Appeals rejected this claim, finding that the line-up procedures which are required for human suspects are inapplicable to inanimate objects like firearms. *People v. Smith,* No. 248039, 2004 WL 2347701, at * 5 (Mich.Ct.App. October 19, 2004)(citing *People v. Miller* (*after remand*), 211 Mich. App. 30, 41; 535 N.W. 2d 518 (1995)).

The Supreme Court has recognized a due process right to exclude identification testimony that results from unnecessarily suggestive procedures that may lead to an irreparably mistaken identification. *See Stovall v. Denno*, 388 U.S. 293, 302 (1967). However, as another federal district court judge has noted: "[T]he Supreme Court has not addressed whether its decision in *Stovall* extends to identification testimony of inanimate objects.  Those courts which have addressed the issue appear to have unanimously held that it does not." *Bear v. Halford*, No. C 96-2122, 2001 WL 34152086, at * 12 (N.D. Iowa. June 14, 2001)(collecting cases).

In *Johnson v. Sublett,* 63 F. 3d 926, 931-32 (9th Cir. 1995), the Ninth Circuit rejected a habeas petitioner's argument that the victim's in-court identification of the automobile that the Petitioner used during the crime was tainted by unduly suggestive pretrial identification procedures

8

and therefore should have been excluded.  "[W]hile this argument deserves credit for creativity, *Stovall* and its progeny do not require car line-ups.  There is no authority holding that a defendant's due process right to reliable identification procedures extends beyond normal authenticity and identification procedures for physical evidence offered by the prosecution." *Id.* at 932.

Likewise, several cases have held that the protections of the Due Process Clause against suggestive identification procedures are inapplicable to witness identifications of weapons used by the robber or robbers to link the defendant to the crime. *See United States v. Zenone*, 153 F. 3d 725 (Table); No. 1998 WL 497297, * 7 (4th Cir. 1998); *See also Dee v. State*, 273 Ga. 739, 545 S.E. 2d 902 (Ga. 2001). [2]

In the absence of any clearly established Supreme Court precedent that requires a constitutional right to line-up procedures with respect to items of physical evidence such as firearms or other inanimate objects, Petitioner is not entitled to habeas relief on his third claim.

### D.  Claim # 4.  The destruction of evidence/ineffective assistance of counsel claim.

In his fourth claim, Petitioner contends that his right to a fair trial was violated when the police were "grossly negligent" in destroying the gun that Ms. Baker identified as the handgun used during the robbery prior to trial.  In the alternative, Petitioner claims that his trial counsel was ineffective for failing to move to dismiss the charges on the basis of the destruction of the gun or to request an adverse inference instruction.

The failure of police to preserve potentially useful evidence for a defendant is not a denial

---

[2]  When there is paucity of federal law on a subject, state decisions interpreting the Federal Constitution, while not binding on a federal court, are persuasive. *See Burns v. Lafler,* 328 F. Supp. 2d 711, 721, n. 3 (E.D. Mich. 2004).

9

of due process of law unless the defendant can show bad faith on the part of police. *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988). When the state fails to preserve evidentiary material "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant," a defendant must show: (1) that the government acted in bad faith in failing to preserve the evidence; (2) that the exculpatory value of the evidence was apparent before its destruction; and (3) that the nature of the evidence was such that the defendant would be unable to obtain comparable evidence by other means. *Monzo v. Edwards,* 281 F. 3d 568, 580 (6th Cir. 2002). A habeas petitioner has the burden of establishing that the police acted in bad faith in failing to preserve potentially exculpatory evidence. *Malcum v. Burt,* 276 F. Supp. 2d 664, 683 (E.D. Mich. 2003)(citing *Lile v. McKune*, 45 F. Supp. 2d 1157, 1163 (D. Kan.1999)). The mere fact that the police had control over evidence and failed to preserve it is insufficient, by itself, to establish bad faith, nor will bad faith be found in the government's negligent failure to preserve potentially exculpatory evidence. *Id.* "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Youngblood,* 488 U.S. at 56, n.*.

Petitioner's claim fails because he has failed to show that the police acted in bad faith in failing to preserve the gun for trial. *Malcum,* 276 F. Supp. 2d at 683. Even if the police acted in bad faith in failing to preserve the gun, there is no due process violation where the destroyed evidence has only speculative exculpatory value, *United States v. Jobson,* 102 F. 3d 214, 219 (6th Cir. 1996); *Malcum,* 276 F. Supp. 2d at 683; *see also White v. Tamlyn,* 961 F. Supp. 1047, 1063

10

(E.D. Mich. 1997), and Petitioner has failed to show that this gun was potentially exculpatory. Finally, petitioner has presented no evidence to show that the police knew that this evidence was potentially exculpatory when they destroyed the gun. Petitioner's conclusory allegations regarding the alleged destruction of potentially exculpatory material fail to establish that the police, in bad faith, destroyed any evidence with knowledge of its exculpatory value. *See Malcum,* 276 F. Supp. 2d at 683. Consequently, Petitioner's claim regarding the destruction of evidence fails.

The Court will likewise reject Petitioner's related ineffective assistance of counsel claim. To prevail on his ineffective assistance of counsel claims, Petitioner must show that the state court's conclusion regarding these claims was contrary to, or was an unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: the petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

In the present case, defense counsel's failure to move to dismiss the charges because the police failed to preserve the gun for trial was not ineffective assistance of counsel, in the absence of any evidence of bad faith on the part of the police. *See United States v. Wiggins,* 971 F. Supp. 660, 665 (N.D.N.Y. 1997). Likewise, under Michigan law, petitioner would only be entitled to have the jury instructed that it could infer that the destroyed, potentially exculpatory evidence would have been favorable to the defendant if the trial court judge first determines that the police or prosecutor acted in bad faith in destroying the evidence. *See People v. Cress,* 466 Mich. 883; 646 N.W. 2d 469 (2002); *see also People v. People v. Oliver,* No. 2005 WL 3115861, * 2 (Mich. Ct.

11

App. November 22, 2005)(adverse inference instruction is appropriate where the prosecutor acted in bad faith).  Because Petitioner has failed to establish that the police acted in bad faith in destroying the gun, he would not be entitled under Michigan law to an adverse inference instruction and counsel was therefore not ineffective in failing to request such an instuction from the court. *See Jeremiah v. Artuz,* 181 F. Supp. 2d 194, 201-02 (E.D.N.Y. 2002).  Accordingly, Petitioner is not entitled to habeas relief on his fourth claim.

### E.  Claim # 5.  The Speedy Trial Claim.

Petitioner next contends that he was deprived of his right to a speedy trial, because, he claims, there was a two and a half year delay before he was brought to trial.  The robbery took place in this case on December 2, 1999.  Petitioner was arrested on February 2, 2000, but the charges were dismissed without prejudice on September 19, 2000.  The charges were subsequently reinstated, but again dismissed without prejudice in May of 2001.  The charges were subsequently re-filed against Petitioner on June 8, 2001 and Petitioner was finally brought to trial on May 7, 2002.

The Sixth Amendment guarantees a criminal defendant the right to a speedy trial. U.S. Const. Amend. VI.  To determine whether a speedy trial violation has occurred, the court must consider the following four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his speedy trial right, and (4) the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972).  No single factor is determinative, rather the court must weigh them and engage in a "difficult and sensitive balancing process" to determine whether a

12

constitutional violation has occurred. *Id.* at 533.

As an initial matter, Petitioner's claim that his speedy trial rights accrued from the time that he was initially arrested by the police in February of 2000 is misplaced. By Petitioner's own admission, the charges were dismissed twice without prejudice against Petitioner, first, on September 19, 2000, and again, in May of 2001. Petitioner was not formally charged again until June 8, 2001.

As stated in *United States v. MacDonald*, 456 U.S. 1, 8-9 (1982), "[o]nce charges are dismissed, the speedy trial guarantee is no longer applicable. At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation." The time period for invoking Petitioner's Sixth Amendment right to a speedy trial commenced anew when Petitioner was charged again with these crimes on June 8, 2001 because the prior charges had been dismissed without prejudice against Petitioner. *See U.S. v. Martinez,* 59 Fed. Appx. 638, 644 (6th Cir. 2003); *United States v. May*, 771 F. 2d 980, 982-83 (6th Cir. 1985).

The length of delay is a "triggering factor" because "until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker,* 407 U.S. at 530. Therefore, to trigger a speedy trial analysis, the accused must allege that the interval between the accusation and the trial has crossed the threshold dividing ordinary from presumptively prejudicial delay. *Doggett v. United States,* 505 U.S. 647, 651-52 (1992); s*ee also Burns,* 328 F. Supp. at 722. Courts have generally found post-accusation delays that approach one year to be "presumptively prejudicial." *Doggett,* 505 U.S. at 652, n. 1; *Shanks*

13

*v. Wolfenbarger,* 387 F. Supp.2d 740, 747 (E.D. Mich. 2005).

Petitioner's speedy trial claim fails for several reasons. In the present case, Petitioner was formally charged with the crimes on June 8, 2001 and trial began on May 7, 2002, some eleven months later. A eleven month delay between arrest and trial is not presumptively prejudicial. *See United States v. Gerald,* 5 F. 3d 563, 566 (D.C. Cir.1993); *Norris v. Schotten,* 146 F. 3d 314, 328 (6th Cir. 1998)(prejudice could not be presumed for purposes of habeas petitioner's speedy trial claim where the delay was less than one year).

Moreover, some of the delay was attributable to Petitioner, in light of the fact that Petitioner requested funds to hire an expert witness on November 29, 2001, the week before trial was originally set to start. Any delays caused by the filing of Petitioner's motion or request for funds for an expert witness was also attributable to the defense, for purposes of a speedy trial analysis. *See Norris,* 146 F. 3d at 327.

The trial was rescheduled for February 5, 2002, but was adjourned by the trial court at the prosecutor's request because the Michigan State Police laboratory witness was in the hospital. A valid reason for a delay in trial, such as an unavailable witness, weighs in favor of the government in a speedy trial analysis. *Barker*, 407 U.S. at 531; *U.S. v. Schreane,* 331 F. 3d 548, 554 (6th Cir. 2003).

Petitioner's claim also fails because there is no evidence on the record that any part of this delay was intentionally caused by the trial court or the prosecution. *Norris v. Scotten*, 146 F. 3d at 327-28; *Shanks,* 387 F. Supp. 2d at 748. There is nothing in the record to indicate a "willful

14

attempt" by the prosecution to delay the trial, *Burns v. Lafler,* 328 F. Supp. 2d at 722 (quoting *Davis v. McLaughlin*, 122 F. Supp. 2d 437, 443 (S.D.N.Y. 2000)), nor is there any evidence that the prosecution intentionally delayed the trial to gain a tactical advantage over Petitioner. *Id.*

Finally, Petitioner is not entitled to habeas relief on his speedy trial claim because he has not shown that his defense was prejudiced by this delay. *Burns,* 328 F. Supp. 2d at 722. Accordingly, for all the foregoing reasons, Petitioner is not entitled to habeas relief on his fifth claim.

**F.  Claim # 6.  The Fifth Amendment claim**.

Petitioner next contends that his Fifth Amendment rights were violated when the police continued to talk with him after he invoked his right to counsel.  Petitioner, however, acknowledges that he did not confess to the crime to the police.  Instead, Petitioner told the police that he was in juvenile court with his nephew on the morning of the robbery and that his car had stalled on the way to court.

Unless its jurisdiction is at stake, a federal district court on federal habeas review "may take up issues in whatever sequence seems best, given the nature of the parties' arguments and the interest in avoiding unnecessary constitutional decisions." *Aleman v. Sternes* 320 F. 3d 687, 691 (7th Cir. 2003).  When confronted with several possible grounds for deciding a case, any of which would lead to same result, a federal court should choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues. *U.S. v. Allen* 406 F. 3d 940, 946 (8th Cir. 2005). A federal district court on habeas review of a state court conviction can directly perform a harmless

error analysis of a habeas petitioner's claims without first reviewing the merits of the claims, when it is in the interest of judicial economy and brevity to do so. *See Porter v. Horn,* 276 F. Supp. 2d 278, 344 (E.D. Pa. 2003). For the reasons that follow, this Court determines that any violation of Petitioner's Fifth Amendment rights was harmless error at best, thus, Petitioner would not be entitled to the issuance of a writ of habeas corpus.

For purposes of determining whether federal habeas relief must be granted to a state prisoner on the ground of federal constitutional error, the appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The *Brecht* harmless error standard applies even if a federal habeas court is the first court to review the case for harmless error, as is the case here. *Gilliam v. Mitchell*, 179 F. 3d 990, 995 (6th Cir. 1999).

On habeas review, a conviction may be reversed if the improper admission of a petitioner's statements, in violation of his or her right to counsel, had a substantial and injurious effect or influence in determining the jury's verdict. *See Alvarez v. Gomez*, 185 F. 3d 995, 998 (9th Cir. 1999). In light of the fact that the overall effect of Petitioner's statements to the police was highly exculpatory, the admission of his statements, even if taken in violation of Petitioner's Fifth Amendment right to counsel, was harmless error at best. *See e.g. Parker v. Singletary,* 974 F. 2d 1562, 1576-77 (11th Cir. 1992). Petitioner is not entitled to habeas relief on his sixth claim.

### G. Claim # 7. The expert witness claim.

Petitioner lastly contends that he was deprived of a fair trial because the trial court refused

16

to appoint an expert in eyewitness identification.

In *Moore v. Tate,* 882 F. 2d 1107, 1110-11 (6th Cir. 1989), the Sixth Circuit held that a defendant in a state criminal trial was not denied his constitutional right to a fair trial when the state trial court excluded expert testimony on the reliability of eyewitness identification, finding that the examination and cross-examination of a witness at trial affords a jury an adequate opportunity to assess the reliability of a witness' identification of the defendant.  Although the Sixth Circuit noted that an expert witness' testimony might give jurors another perspective from which to assess an eyewitness' testimony, such testimony was not constitutionally required. *Id.*  Therefore, as long as a defendant has an adequate opportunity to cross-examine witnesses, the exclusion of expert testimony on the reliability of eyewitness identification is not error. *Mason v. Mitchell,* 95 F. Supp. 2d 744, 775 (N.D. Ohio 2000).

In the present case, Ms. Baker was examined and cross-examined about her inability to positively identify Petitioner as being her assailant.  Baker was also questioned about her identification of the gun as being the weapon used in the robbery.  Moreover, there was significant evidence linking Petitioner to this crime, including his admission to Dmitri Anderson.  Therefore, Petitioner was not deprived of a fair trial by the court's refusal to appoint him an expert in the field of eyewitness identification.

**H.  A Certificate of Appealability.**

Pursuant to 28 U.S.C. § 2253, before a petitioner may appeal a decision of this Court, the Court must determine if petitioner is entitled to a Certificate of Appealability (COA). 28 U.S.C. §

2253(c)(1)(a); Fed. R.App. P. 22(b).  The Court must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R.App. P. 22(b).  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (*quoting Barefoot v. Estelle*, 463 U.S. 880, 893, n. 4 (1983)).

In applying the above standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the Petitioner's claims. *Miller-El v. Cockrell*, 537 U.S. 322, 336-37 (2003).  "When a habeas applicant seeks permission to initiate appellate review of the dismissal of his petition," a federal court should "limit its examination to a threshold inquiry into the underlying merit of his claims." *Id.* at 323.

After conducting the required inquiry, and for the reasons stated in the order above, the Court finds that Petitioner has not made a substantial showing of the denial of a constitutional right with respect to any of the claims presented. *See* 28 U.S.C. § 2253(c)(2).  Petitioner should not receive any encouragement to proceed further. *Slack*, 529 U.S. at 484.  Because the Court can discern no good faith basis for an appeal, *see Miller-El*, 537 U.S. at 338, any appeal would be frivolous. The Court will therefore deny a certificate of appealability. *See Long v. Stovall,* No. 2006 WL 2711824, * 6.  The Court will also deny Petitioner leave to appeal *in forma pauperis,* because

18

the appeal would be frivolous. *Hence v. Smith,* 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the petition for a writ of habeas corpus [docket entry 1] is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that leave to appeal *in forma pauperis* is **DENIED**..

**SO ORDERED.**

Dated: ___November 14, 2006___                    s/Paul V. Gadola_____
                                                  HONORABLE PAUL V. GADOLA
                                                  UNITED STATES DISTRICT JUDGE

19

Certificate of Service

I hereby certify that on __November 15, 2006__ , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

_____ Brad H. Beaver _____ , and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____ John Fitzgerald Smith _____ .

s/Ruth A. Brissaud _____

Ruth A. Brissaud, Case Manager

(810) 341-7845

20